Case 4:24-cv-02723   Document 54   Filed on 11/27/24 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
November 27, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CITYPURE, L.L.C., § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:24-CV-02723 |
| § | |
| INTERNATIONAL OLYMPIC § | |
| COMMITTEE, *et al.*, § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion for a temporary restraining order and a preliminary injunction (Dkt. 17) filed by the International Olympic Committee and the United States Olympic & Paralympic Committee (collectively, the "Olympic Parties") against CityPure L.L.C. and Stephen P. Frayne, Jr. (collectively, "CityPure"). The Court held an evidentiary hearing on this motion on August 23, 2024. (Dkt. 36). After careful consideration of the parties' written submissions, the evidentiary record developed at the hearing, and the other filings in the case, the Olympic Parties' motion (Dkt. 17) is **GRANTED**.

### I.   FACTUAL BACKGROUND

The Olympic Parties supervise the organization of the Olympic Games. (Dkt. 17 at p. 5). The Olympic Parties use the naming convention "[CITY][YEAR]" as trademarks ("City Year Marks") to "designate and differentiate between each of the Olympic Games." (*Id*. at p. 7). The City Year Mark PARIS 2024 is used for the Paris 2024 Games, and the

City Year Marks LA 2028, LA28, and LOS ANGELES 2028 are used for the upcoming 2028 Summer Games. *Id*. The Olympic Parties "have the exclusive right to control broadcasts of the Games" and "generate the majority of their revenue by licensing these broadcasts"—in addition to the use of City Year Marks. *Id*. Before each Olympic Games, the Olympic Parties engage "in a robust licensing program through which sponsors and partners are authorized to use the City Year Marks and Olympic Marks on various goods and services." (*Id*. at pp. 7 – 8). The Olympic Parties give their broadcast partners an exclusive right to stream the Games, and ticketholders are "prohibited from livestreaming or sharing any still or moving images from the Games." (*Id*. at p. 8). Finally, the Olympic Parties maintain an official website for the Paris 2024 Games and a mobile application, "on which it publishes news and information about the Games, sponsors, and other content related to the games." *Id*.

CityPure is an entity that has registered "hundreds of domain names consisting of the name of the city where the Olympic Games might be held and an even numbered year corresponding to the years when the Summer Games will be held." (*Id*. at p. 9). In its own words, CityPure's "mission is to provide public interest watchdog activities including … corporate social responsibility activities regarding Olympic sponsors and their supply chain." (Dkt. 29 at p. 3).

Prior to the Tokyo 2020 Games, CityPure registered Tokyo2020.com, and the Olympic Parties sued CityPure for bad faith acquisition of the City Year Domains. *Id*. The parties settled these claims in a 2017 settlement agreement ("the Agreement"). (Dkt. 17 at

p. 9). The Agreement allows for CityPure to "maintain ownership of the City Year Domains so long as they comply with" various restrictions on the use of those domains. *Id*. Under Paragraph 6(a) of the Agreement, any violation of those restrictions found in Paragraph 2(c) by CityPure constitutes "immediate and irreparable harm to the Olympic Parties" that entitles the Olympic Parties to "immediate injunctive relief without a further showing of irreparable harm." (*Id*. at p. 10).

Immediately prior to the Paris 2024 Games, CityPure published a website at Paris2024.com that used the trademark PARIS GAMES, promised a livestream to the Paris 2024 games, purported to offer tickets to the Paris 2024 Games, and contained information on the status of the Paris 2024 Games. *Id*. CityPure then released a mobile "SportzStream App" for livestreaming the Paris 2024 Games, which uses the trademarks PARIS GAMES and PARIS OLYMPICS, among others. (*Id*. at p. 11). On Paris2024.com, CityPure promises "price points" for "ad placements" on both Paris 2024.com and the SportzStream App. *Id*. At one point, it appears CityPure solicited a sponsorship from Pepsico—leaving flyers offering an opportunity to "aggressively position Pepsi vs. Coca-Cola at Paris Olympics" and linking an "unauthorized *Pepsi-branded version* of Paris2024.com and its associated app." (*Id*. at p. 12) (emphasis in original). CityPure also asserts in its materials that it will generate revenue through the SportzStream App by charging users for access during the Paris 2024 Games. (*Id*. at pp. 12 – 13). CityPure emphasizes that the timing of its release of both Paris2024.com and the SportzStream App will pressure the Olympic Parties to acquire the domain and streaming application. *Id*. In its own words, City Pure

explains: "This company is built to be bought by [the International Olympic Committee]." (Dkt. 17-17 at p. 2).

Now, the Olympic Parties bring this action against CityPure for misappropriating the Olympic Parties' trademarks, breaching the Agreement, and violating federal and state law. (Dkt. 17 at p. 14). The Olympic Parties move under Federal Rule 65(b) for a temporary restraining order and preliminary injunction. (Dkt. 17). This Court granted the Olympic Parties' application for a Temporary Restraining Order. (Dkt. 23). After holding a hearing, the Court now assesses the Olympic Parties' motion for a preliminary injunction in this matter.

## II.   LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). In the Fifth Circuit, the following well-established framework generally governs the determination of whether to grant a preliminary injunction:

> To be entitled to a preliminary injunction, the movant must satisfy each of the following equitable factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest. Because a preliminary injunction is an extraordinary remedy, it should not be granted unless the movant has clearly carried the burden of persuasion on all four requirements. Failure to sufficiently establish any one of the four factors requires this Court to deny the movant's request for a preliminary injunction.

*Id*.

The requirements for obtaining a preliminary injunction are stringent in all cases, but "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

In presiding over a preliminary injunction hearing, a district court may "give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be held[.]" *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (quoting 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2949 at 471). In particular, "[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding." *Dixon*, 835 F.2d at 558 (quoting *Asseo v. Pan American Grain Co., Inc.*, 805 F.2d 23, 26 (1st Cir. 1986)).

### III. ANALYSIS

The Olympic Parties have carried their burden of persuasion on all four of the required elements.

**I.    Substantial likelihood of success on the merits**

"To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). "To assess the likelihood of success on the merits, [courts] look to standards provided by the substantive law." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (quotation marks omitted). When the plaintiff has brought multiple causes of action, he need only present a prima facie case on one of them. *Kalsi Engineering, Inc. v. Davidson*, No. 4:14-CV-1405, 2014 WL 12540550, at *2 & n.2 (S.D. Tex. Sept. 2, 2014); *Texas v. U.S.*, 95 F. Supp. 3d 965, 981 (N.D. Tex. 2015); *see also Butler v. Alabama Judicial Inquiry Commission*, 111 F. Supp. 2d 1224, 1230 (N.D. Ala. 2000) ("Under the first requirement for obtaining a temporary restraining order, the court does not have to find that Plaintiffs have a substantial likelihood of success on every claim set forth in their Complaint."). The Olympic Parties have clearly shown a substantial likelihood of success on the merits of at least one claim.

The Olympic Parties have asserted a breach of contract claim under Texas law against CityPure. A Texas breach of contract claim has four elements: "(1) a valid contract, (2) plaintiff's performance, (3) defendant's breach, and (4) resulting damages." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 993 (5th Cir. 2019). Here, neither party disputes that the Agreement is valid and enforceable. (Dkt. 17 at p. 15); *see* (Dkt. 29 at p. 9). Instead, the Olympic Parties allege—and CityPure disputes—that CityPure breached, among others, Paragraph 2(c) of the Agreement. (Dkt. 17 at p. 15). The Agreement states, in relevant part:

> "[City Pure] agree[s] not to use any City Year Domain or Former City Year Domain to generate revenue, or in connection with the offering for sale of goods or services in commerce…or for any commercial purpose whatsoever…."

(Dkt. 29 at p. 6).

For evidence of CityPure's breach, the Olympic Parties specifically point to CityPure's seeking sponsors for the domain, promoting the SportzStream App "which they will monetize through sponsorship and in-app fees," soliciting investors, and offering Olympic content. (Dkt. 17 at p. 15). However, CityPure argues that it has complied with the terms of the Agreement because its use of the domain does not constitute a commercial purpose. (Dkt. 29 at p. 10).

The Court finds that the Olympic Parties have provided sufficient evidence supporting its allegations of CityPure's breach. The broad language in the Agreement—namely, the prohibition on CityPure's use of the domain "for any commercial purpose whatsoever"—encompasses CityPure's activities, as demonstrated by the evidence in the pending motion. Specifically, the Court is convinced that CityPure's operation of the domain for the purposes of securing profit "from sponsors, SportzStream app users, investors, and the Olympic Parties themselves" is likely a violation of the Agreement. (Dkt. 17 at p. 16); *see Nazari v. Kohler Co.*, 2008 WL 4542850, at *3 (5th Cir. Oct. 13, 2008) (seeking future sales constitutes a "commercial purpose"). As such, the Olympic Parties have demonstrated a substantial likelihood that they will prevail on the merits of their breach of contract claim.

## II. Threat of irreparable injury

The Olympic Parties have also clearly shown a substantial threat of irreparable injury. Generally, "[t]he extraordinary equitable remedy of an injunction requires that the [movant] demonstrate that, without injunctive relief, he will suffer an irreparable injury for which damages are an inadequate remedy." *Jones v. American Council on Exercise*, 245 F. Supp. 3d 853, 867 (S.D. Tex. 2017) (quotation marks omitted). "[T]he injury at issue must be actual and imminent, not speculative or remote." *Allied Home Mortgage Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011).

Here, the Olympic Parties argue that they are harmed by the devaluation of the goodwill of their trademarks, the deterioration of value of the Olympic Games' sponsorship, and the breaching of the exclusivity of their agreements and licenses. (Dkt. 17 at p. 25). The Court agrees and finds that CityPure's actions jeopardize the Olympic Parties' goodwill and the protection of their trademarks. *See* (Dkt. 29 at p. 14). Accordingly, the Olympic Parties have demonstrated irreparable harm as a result of CityPure's actions.

## III. Relative weight of threatened harm

The Olympic Parties have clearly shown that the threat of harm they face if their motion for a preliminary injunction is denied outweighs the threat of harm faced by CityPure if the motion is granted. The potential harm to the Olympic Parties is the irreparable injury to their goodwill, among the other harms detailed above. In contrast, while CityPure fails to allege any harm it may suffer if the injunction were granted in its

briefing, the Court recognizes it may suffer the loss of potential revenue from its improper operation of the domain and streaming application. *See* (Dkt. 29 at p. 14). The Court finds that the harm to the Olympic Parties' goodwill outweighs this harm to Citypure, and the Olympic Parties have satisfied the third of the four equitable factors required to obtain preliminary injunctive relief.

### IV. The public interest

Finally, the Olympic Parties have clearly shown that granting their motion for a preliminary injunction will not disserve the public interest—in fact, it will accomplish the opposite. This Court has found that "the public interest favors settlement agreements and contracts, generally." *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730, 740 (S.D. Tex. 2010). Here, enforcing the Agreement would serve this interest.

Further, while CityPure argues that "there is no great risk of consumer confusion" under these circumstances, the Court disagrees—it is evident that consumers will likely assume that CityPure's domain and streaming app have ties to the Olympic Parties. (Dkt. 29 at p. 15). This Court has recognized that the public interest is served where permanent injunction protects "consumers from deception or confusion," and an injunction under these circumstances would serve the same purpose. *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 543 (S.D. Tex. 2013).

As such, the Court finds that the Olympic Parties have sufficiently demonstrated the fourth factor required to obtain preliminary injunctive relief.

### IV. CONCLUSION

Accordingly, for the above reasons, the Olympic Parties' motion for a preliminary injunction (Dkt. 17) is **GRANTED**.

It is **ORDERED** that:

(1) CityPure, and anyone acting or purporting to act in concert or participation with them, are enjoined from releasing or re-releasing a mobile app for the Paris 2024 Olympic Games or the LA 2028 Olympic Games that contains a livestreaming feature or uses the Olympic Parties' intellectual property, including trademarks identical or confusingly similar to OLYMPIC, PARALYMPIC, PARIS 2024, PARIS GAMES, LA28, LA 2028, or LOS ANGELES 2028;

(2) CityPure must immediately remove from the Paris2024.com domain any and all content infringing the Olympic Parties' intellectual property rights, including trademarks identical or confusingly similar to OLYMPIC, PARALYMPIC, PARIS 2024, PARIS GAMES, LA28, LA 2028, or LOS ANGELES 2028 and including all text and images copied, scraped from or that otherwise mimic websites, platforms and mobile apps owned or operated by the Olympic Parties;

(3) CityPure, and anyone acting or purporting to act in concert or participation with them, are enjoined from streaming, or facilitating the streaming by others, any of the Paris 2024 Games on Paris2024.com, LA2028.com, LosAngeles.com, LA2028.org, LosAngeles.org, or any other website or platform;

(4) CityPure, and anyone acting or purporting to act in concert or participation with them, are enjoined from using any City Year Domain or Former City Year Domain (as that

term is defined in the Agreement), including without limitation the domains Paris2024.com, LA2028.com, LosAngeles.com, LA2028.org, LosAngeles.org, to generate revenue or for a commercial purpose, and from engaging in any further violations of the Agreement, including use of any City Year Domain or Former City Year Domain to solicit or obtain investors or sponsors;

(5) CityPure, and anyone acting or purporting to act in concert or participation with them, are enjoined from selling, assigning or otherwise transferring ownership or control of the City Year Domains and Former City Year Domains, including any such domains acquired since the Parties entered the Agreement;

(6) CityPure, and anyone acting or purporting to act in concert or participation with them, are enjoined from contacting any person or entity for the purpose of offering sponsorships or advertisements in connection with any good or service that mentions or offers the Olympic Parties, the Olympic Games, the Olympic Movement, or the Olympic Parties' intellectual property, including trademarks identical or confusingly similar to OLYMPIC, PARALYMPIC, PARIS 2024, PARIS GAMES, LA28, LA 2028, or LOS ANGELES 2028.

Failure to comply with this order may result in sanctions for both CityPure and its counsel.

SIGNED at Houston, Texas on November 27, 2024.

_____
GEORGE C. HANKS, JR
UNITED STATES DISTRICT JUDGE